```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON


FLOYD SAYRE, SAM JUNIPER,
and DON ROLLINS,

          Plaintiffs

v.                                   Civil Action No. 2:07-0787

UNITED STEEL WORKERS OF AMERICA,
AFL-CIO/CLC, DISTRICT 8; UNITED
STEEL WORKERS OF AMERICA, LOCAL 644;
UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY, ALLIED
INDUSTRIAL AND SERVICE WORKERS
INTERNATIONAL UNION, AFL-CIO/CLC;
LEO GERARD, individually and in his
representative capacity as an Official,
Agent, and President of United Steel,
Paper and Forestry, Rubber,
Manufacturing, Energy, Allied
Industrial and Service Workers
International Union, AFL-CIO/CLC and
its predecessor unions; RICHARD H.
DAVIS, individually and in his
representative capacity as an
Official, Agent, and International
Vice President of Administration
of United Steel, Paper and
Forestry, Rubber, Manufacturing,
Energy, Allied Industrial and
Service Workers International
Union etc.; KENNETH COSS,
individually and in his
representative capacity as an
Official, Agent, and member of
United Steel, Paper and Forestry,
Rubber, Manufacturing, Energy,
Allied Industrial and Service
Workers International Union,
AFL-CIO/CLC and its predecessor
unions; THURSTON SMITH, individually
and in his representative capacity
as an Official, Agent, and member
of United Steel, Paper and Forestry,
```

Rubber, Manufacturing, Energy,
Allied Industrial and Service
Workers International Union,
AFL-CIO/CLC and its predecessor
unions; RON HOOVER, individually
and in his representative capacity
as an Official, Agent, and President
of United Steel, Paper and Forestry,
Rubber, Manufacturing, Energy,
Allied Industrial and Service Workers
International Union, AFL-CIO/CLC and
its predecessor unions; EARNEST R.
(BILLY) THOMPSON, individually and
in his representative capacity as an
Official, and Employee of District 8
and the parent Union and its
predecessor unions; KAREN SHIPLEY,
individually and in her representative
capacity as an Official, and Employee
of District 8 and the parent Union
and its predecessor unions; BRIAN
WEDGE, an individual in his capacity
as President of Local 644 and its
predecessor unions; and DOES 1
through 5, inclusive,

        Defendants

## MEMORANDUM OPINION AND ORDER

       Pending are two motions: the first by the plaintiffs to remand, filed January 4, 2008, and the other by the defendants to dismiss, filed January 11, 2008.  This action is currently stayed pending resolution of these two motions.

## I.  Background

        This action was filed as a class action by retirees of

M&G Polymers, USA, LLC ("M&G"), or one of its predecessor

companies such as Shell Chemical Company or The Good Year Tire

and Rubber Company, who were employed at the Apple Grove plant in

Mason County.[1]  (Compl. ¶ 1).  During their employment with M&G

or one of its predecessors, the plaintiffs were represented by

Local 644, District 8 of the United Steel, Paper and Forestry,

Rubber, Manufacturing, Energy, Allied Industrial and Service

Workers International Union, AFL-CIO/CLC ("the Union").  (Id.).

The plaintiffs' claims are based upon lifetime, no-cost retiree

health benefits which they believe were promised to them and

subsequently taken away.

        The plaintiffs allege that they received these no-cost

health benefits until January 1, 2007.  (Compl. ¶ 16).  In

December of 2006, the plaintiffs received a series of three

letters from their former employer stating that, beginning on the

first of the new year, the retirees or their qualified dependents

---

        [1] The proposed class includes, in addition to the retirees,
their spouses, surviving spouses and other dependents, the
surviving spouses of any employee of M&G who died during his
employment, and others eligible for lifetime retiree health
benefits.  (Compl. ¶ 2, 21).

3

would have to begin paying for part of their health benefits --
that is, they would have to start making monthly contributions
based on the extent to which M&G's costs for retiree insurance
exceeded annual caps agreed to by M&G and the Union.  (Id.; id.
at Exhibit A).  This change to the retirees' benefits was agreed
to by M&G and the Union and is reflected in a "letter of
understanding," dated November 23, 2003.  (Id. at ¶ 17; id. at
Exhibit B).

        Prior to the filing of this action by the plaintiffs,
the defendant Union and a group of retirees filed suit against
M&G in the Southern District of Ohio.  Therein, they asserted
claims under section 301 of the Labor Management Relations Act
("LMRA") and the Employee Retirement Income Security Act
("ERISA"), alleging violation of the collective bargaining
agreement ("CBA") providing lifetime retiree health benefits.
Tackett v. M&G Polymers, USA, LLC, 523 F. Supp. 2d 684, 687 (S.D.
Ohio 2007).  The district court dismissed the claims under the
LMRA on the ground that it found no breach of a collective
bargaining agreement.  Id. at 691.  In so holding, the court
found that letters of understanding dating back to 1991 permitted
implementation of caps on the employer's contribution to health
benefit premiums, and so the plaintiffs were not entitled to

lifetime, no-cost health benefits as the plaintiffs had contended.  Id.  The court stated, "[t]he retirees are entitled to an employer contribution toward health benefits; there is simply no contractual right to contribution-free health benefits, even if agreements have long deferred the eventual collection of the retirees' shares."  Id.  On April 3, 2009, the United States Court of Appeals for the Sixth Circuit reversed and remanded, concluding that "the Plaintiffs have sufficiently shown an intention to vest healthcare benefits to survive a motion to dismiss[.]"  Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 481 (6th Cir. 2009).

The plaintiffs instituted this action against the Union and various union officials in the Circuit Court of Kanawha County on August 3, 2007.  Observing that the defendant Union does not represent them inasmuch as they are retirees, the plaintiffs contend that the Union could not negotiate on the plaintiffs' behalf without their consent, which consent was not given. (Compl. ¶ 18).  The plaintiffs assert two claims against the Union and its officials.

Count I is a claim for negligence.  The plaintiffs contend that the defendants had a duty or voluntarily assumed a duty to protect the retirees' interests, to continue the status

quo with respect to the provision of health care benefits, and to refrain from taking actions that might impair the rights of the retirees with respect to those benefits.  (Id. at ¶ 29). According to the plaintiffs, the defendants breached these duties by failing to exercise reasonable care, directly and proximately causing the elimination of no cost health care benefits effective January 1, 2007.  (Id. at ¶¶ 30-31).

Count II is a claim for negligent misrepresentation. The plaintiffs allege that the defendants negligently represented to the plaintiffs that they would be entitled to no cost health care benefits for their life, and that the plaintiffs relied thereon.  (Id. at ¶ 35-36).  The plaintiffs assert that they first learned that the defendants were negligent in making this representation on or about January 1, 2007.  (Id. at ¶ 38).  They claim that as a result of the defendants' negligence, they suffered economic loss, severe and pervasive emotional distress, and physical injury to their health and persons.  (Id. at ¶ 40).

The defendants removed this action on December 5, 2007, on the ground that the plaintiffs claims were completely preempted by the LMRA.

6

## II. Complete Preemption

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Title 28 U.S.C. § 1441(a) governs federal removal jurisdiction and provides as follows:

> [a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the . . . defendants . . . to the district court of the United States for the district and division embracing the place where such action is pending. . . .

28 U.S.C. § 1441(a).

The burden of establishing removal falls upon the removing party. Mulcahey v. Colum. Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994). Our court of appeals has observed time and again that it is obliged to construe removal jurisdiction strictly:

> We have noted our obligation "to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it. Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005) (quoting Mulcahey, 29 F.3d at 151). . . . Consistent with these principles, we have recognized that state law complaints usually must stay in state court when they assert what appear to be state law claims. See, e.g., Harless v. CSX Hotels, Inc., 389

7

> F.3d 444, 450 (4th Cir. 2004); <u>King</u>, 337 F.3d at 424;
> <u>Darcangelo v. Verizon Communications, Inc.</u>, 292 F.3d
> 181, 186 (4th Cir. 2002); <u>Cook v. Georgetown Steel
> Corp.</u>, 770 F.2d 1272, 1274 (4th Cir. 1985).

<u>Lontz v. Tharp</u>, 413 F.3d 435, 440 (4th Cir. 2005).  "Any doubts
concerning the propriety of removal must be resolved in favor of
retained state court jurisdiction."  <u>Marshall v. Manville Sales,
Corp.</u>, 6 F.3d 229, 232 (4th Cir. 1993).

Inasmuch as neither party has alleged diversity of
citizenship, the source of jurisdiction at issue here is 28
U.S.C. § 1331, which provides "[t]he district courts shall have
original jurisdiction of all civil actions arising under the
Constitution, laws, or treaties of the United States."  Removal
is appropriate if the face of the complaint raises a federal
question.  <u>Lontz</u>, 413 F.3d at 439.

Our court of appeals recently elaborated on this point
by discussing the longstanding well-pleaded complaint rule:

> In determining whether a plaintiff's claim arises under
> federal law, we apply the well-pleaded complaint rule,
> which holds that courts "ordinarily . . . look no
> further than the plaintiff's [properly pleaded]
> complaint in determining whether a lawsuit raises
> issues of federal law capable of creating federal-
> question jurisdiction under 28 U.S.C. § 1331."  <u>Custer
> v. Sweeney</u>, 89 F.3d 1156, 1165 (4th Cir. 1996).  Thus,
> in examining the complaint, our first step is to
> "discern whether federal or state law creates the cause
> of action."  <u>Mulcahey</u>, 29 F.3d at 151; <u>see also Dixon
> v. Coburg Dairy, Inc.</u>, 369 F.3d 811, 816 (4th Cir.

2004) ("The vast majority of lawsuits 'arise under the law that creates the cause of action.' ") (quoting Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916).).  If federal law creates a plaintiff's claim, then removal is proper.  Mulcahey, 29 F.3d at 151.  The general rule, of course, is that a plaintiff is the "master of the claim," and he may "avoid federal jurisdiction by exclusive reliance on state law" in drafting his complaint.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005).

The Supreme Court has recognized a narrow exception to the well pleaded complaint rule known as the complete preemption doctrine.  Caterpillar, 482 U.S. at 393.  Under this doctrine, removal is appropriate if "the subject matter of a putative state law claim has been totally subsumed by federal law — such that state law cannot even treat on the subject matter."  Lontz, 413 F.3d at 439-40.  When complete preemption exists, federal law provides the exclusive cause of action, and in essence "there is . . . no such thing as a state-law claim."  Id. at 440 (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 11 (2003)).  "The doctrine of complete preemption thus prevents plaintiffs from 'defeat[ing] removal by omitting to plead necessary federal

questions.'"[2]  <u>Id.</u> (quoting <u>Franchise Tax Bd. v. Constr. Laborers</u> <u>Vacation Trust</u>, 463 U.S. 1, 22 (1983)).

To prove complete preemption, "a defendant must establish that the plaintiff has a 'discernible federal [claim]' and that 'Congress intended [the federal claim] to be the exclusive remedy for the alleged wrong.'"  <u>Pinney</u>, 402 F.3d at

---

[2] The doctrine of complete preemption is starkly different from the defense of federal conflict or ordinary preemption. <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63-64 (1987); <u>Pinney</u>, 402 F.3d at 449.  "Under ordinary or conflict preemption, 'state laws that conflict with federal laws are preempted, and preemption is asserted as a federal defense to plaintiff's suit.'" <u>Sonoco Prods. Co. v. Physicians Health Plan Inc.</u>, 338 F.3d 366, 370-71 (4th Cir. 2003).  Further describing conflict or ordinary preemption, the Fourth Circuit has explained:

> The absence of a federal cause of action says nothing about whether the state claim is preempted in the ordinary sense: it is entirely within the power of Congress to completely eliminate certain remedies by preempting state actions, while providing no substitute federal action.  But in such cases, preemption serves only as a federal defense, the barred claims are not completely preempted, and thus not removable to federal court.

<u>King v. Marriott Int'l</u>, 337 F.3d 421, 425 (4th Cir. 2003).  A case cannot be removed pursuant to section 1331 solely on the basis of federal conflict or ordinary preemption defenses but can be removed if the complete preemption doctrine applies.  <u>Pinney</u>, 402 F.3d at 449; <u>King</u>, 337 F.3d at 425; <u>Abbot v. Am. Cynamid Co.</u>, 844 F.2d 1108, 1111 (4th Cir. 1988).  It is important to note the federal preemption defense may still be properly raised in state court if the complete preemption doctrine is found not to be present and remand is appropriate.  <u>See</u> <u>e.g.</u> <u>Caterpillar, Inc.</u>, 482 U.S. at 397; <u>King</u>, 337 F.3d at 425.

449 (citing King, 337 F.3d at 425).  Here, the defendants rely on § 301 of the LMRA, which is one of only three statutes in which the Supreme Court has found a Congressional intent to create an exclusively federal remedy.  See Beneficial, 539 U.S. at 10-11 (National Bank Act); Metro. Life, 481 U.S. at 66-67 (ERISA § 502(a)); Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists, 390 U.S. 557, 560 (1968) (LMRA § 301).

Section 301 of the LMRA provides in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185.  The Supreme Court has held that this statute announces a federal policy of ensuring uniform interpretation of CBAs in order to "promote the peaceable, consistent resolution of labor-management disputes."  Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 (1988).

Section 301 will preempt a state law claim if resolution of the state claim is "inextricably intertwined with consideration of the terms of the labor contract" or when application of state law to a dispute "requires the

11

interpretation of a collective bargaining agreement." <u>Lingle</u>, 486 U.S. at 413; <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 213 (1985).  Section 301 does not "pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 123 (1994).  Rather, "it is the legal character of a claim, as 'independent' of rights under a collective-bargaining agreement, . . . that decides whether a state cause of action may go forward."  <u>Id.</u> at 123-24.

     The plaintiffs contend they have no cognizable remedy under section 301 of the LMRA because, as retirees, they are not members of the collective bargaining unit, and so their action must arise under state law.  They rely on the decision of the United States Supreme Court in <u>Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co., Chemical Division</u>, 404 U.S. 157 (1971), wherein the Court held that retirees are neither "employees" within the meaning of the collective-bargaining obligations of the LMRA nor members of the collective bargaining unit.  <u>Pittsburgh Plate Glass</u>, 404 U.S. at 172.  In a footnote, the Court noted:

     Since retirees are not members of the bargaining unit,
     the bargaining agent is under no statutory duty to
     represent them in negotiations with the employer. . . .
     This does not mean that when a union bargains for
     retirees -- which nothing in this opinion precludes if
     the employer agrees -- the retirees are without

12

protection.  Under established contract principles, vested retirement rights may not be altered without the pensioner's consent.  <u>See generally</u> Note, 70 Col. L. Rev. 909, 916-920 (1970).  The retiree, moreover, would have a federal remedy under § 301 of the Labor Management Relations Act for breach of contract if his benefits were unilaterally changed.  <u>See</u> <u>Smith v. Evening News Assn.</u>, 371 U.S. 195, 200-201, 83 S. Ct. 267, 270-271, 9 L. Ed.2d 246 (1962); <u>Lewis v. Benedict Coal Corp.</u>, 361 U.S. 459, 470, 80 S. Ct. 489, 495, 4 L. Ed.2d 442 (1960).

<u>Id.</u> at 181 n.20 (observing that the mid-term unilateral modification of retirees' benefits does not constitute an unfair labor practice in violation of sections 8(a)(1) and (5) of the NLRA); <u>see also</u> <u>Smith v. ACF Industries, Inc.</u>, No. 3:93-cv-0925, 1995 WL 441279 (S.D. W. Va. Feb 10, 1995) (noting that the consent of the retirees is also required in addition to the consent of the employer).

In <u>Smith v. ACF Industries, Inc.</u>, this court had an opportunity to apply <u>Pittsburgh Plate Glass</u> to claims asserted by a group of former employees against their former union for breach of the duty of fair representation under section 301 of the LMRA when the former employees were not rehired to fill openings in the labor force during a period of increased consumer demand as the former employees believed the employer was obligated to do under the terms of the CBA.  <u>Smith</u>, 1995 WL 441279, at * 1.  The court held that the former employees lacked standing to assert a

13

claim against the union for breach of the duty of fair representation inasmuch as the former employees were not members of the bargaining unit at the time of the alleged breach and were, accordingly, owed no duty of fair representation by their former union.  Id. at *3.

Noting that the former employee plaintiffs in Smith failed in their attempt to assert a cognizable claim under section 301 of the LMRA against their former union, and further noting that footnote 20 of Pittsburgh Plate Glass states that "[u]nder established contract principles, vested retirement rights may not be altered without the pensioner's consent," the plaintiffs assert that they are attempting to allege state common law actions against their former union.  The plaintiffs suggest that state claims can be asserted under the common law doctrines of negligence and negligent misrepresentation, and that such claims are not completely preempted by section 301 of the LMRA.

The plaintiffs contend that the opinion of the Seventh Circuit Court of Appeals in Nelson v. Stewart, 422 F.3d 463 (7th Cir. 2005), supports their position that their claims are not completely preempted.  Indeed, the plaintiffs state that they modeled their claims after those alleged in Nelson.  (Mem. Supp. Mot. to Remand 7).  According to the plaintiffs, the Seventh

14

Circuit held in <u>Nelson</u> that section 301 of the LMRA did not completely preempt the claims of retirees who alleged negligence and misrepresentation against their former union that had negotiated a new CBA that terminated retirees' health benefits without the retirees' consent following their former employer's entry into Chapter 11 reorganization. (<u>Id.</u> at 7-8).

The plaintiffs' explanation of the import of <u>Nelson</u> is guided by a faulty reading of the Seventh Circuit's holding. In <u>Nelson</u>, the union represented the retirees in collective bargaining negotiations pursuant to section 1114 of the Bankruptcy Code. That statute provides:

> A labor organization shall be, for purposes of this section, the authorized representative of those persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is a signatory, unless (A) such labor organization elects not to serve as the authorized representative of such persons, or (B) the court, upon a motion by any party in interest, after notice and hearing, determines that different representations of such persons is appropriate.

11 U.S.C. § 1114(c)(1). The union, in removing <u>Nelson</u> and opposing the retirees' motion to remand, noted that several courts of appeal have held that a union's implied duty of fair representation arising under the NLRA has the same preemptive force as section 301 of the LMRA, and sought to further extend that preemption to the context of section 1114 of the Bankruptcy

Code. _Nelson_, 422 F.3d at 470. The union suggested that:

> like section 301 and the judicially implied duty of
> fair representation, § 1114 necessitates a body of
> federal law such that any state-law action that alleges
> that a union assumed, and later breached, a duty to
> represent retired bargaining unit members in a Chapter
> 11 case arises only under federal law. As such, state
> law provides no independent source of rights for
> retired bargaining unit members in situations in which
> the union undertakes to represent them in bankruptcy
> proceedings.

_Id._ The district court agreed with the union's interpretation of

section 1114 and held that the retirees' state-law claims against

the union were completely preempted inasmuch as any purported

duty of the union to represent the retirees during the bankruptcy

was derived from and dependent on a federal statute, namely,

section 1114. _Id._ at 465.

The Seventh Circuit reversed, rejecting the union's

contention that section 1114 has preemptive effect. _Id._ at 473-

75. After carefully considering the statutory scheme of section

1114 and its legislative history, the court stated:

> As we noted earlier, the Supreme Court pointed out in
> _Lingle_, 486 U.S. at 403-05, 108 S. Ct. 1877, that, in
> interpreting section 301 of the LMRA, the Court was
> able to discern quite clearly that Congress, in
> enacting that provision, not only had created a
> statutory cause of action for the violation of a labor
> agreement, _see_ _id._ (citing _Lincoln Mills_, 353 U.S. at
> 451, 77 S. Ct. 912), but also had authorized the
> creation of a substantive common law of collective
> bargaining agreements, _see_ _id._ (citing _Lucas Flour_, 369
> U.S. at 103-04, 82 S. Ct. 571). Thus, in interpreting

16

and applying section 301, a court must apply,
necessarily, the federal policy of our national labor
laws.  See Lincoln Mills, 353 U.S. at 456-57, 77 S. Ct.
912.  Any action arising under that statute is
therefore based on federal law and is removable because
it arises under the laws of the United States.  See
Avco, 390 U.S. at 570, 88 S. Ct. 1235.

The same policy concerns simply are not at stake in the
situation before us today.  In deciding an issue under
§ 1114, the bankruptcy court's focus is not the text of
the collective bargaining agreement from which the
retirees' benefits are derived, but on ensuring that
those rights are treated "fairly and equitably" in
fashioning the final plan of reorganization.  Although
the court has certain responsibilities, outlined in the
statute, to select an entity that will represent the
interests of the retirees so that the court's objective
can be achieved, the statute contains no indication
that Congress intended that federal law displace state
law with respect to all aspects of that relationship.

Id. at 475.

        And so, the Seventh Circuit did not hold that section
301 did not preempt the retirees' claims, as the plaintiffs
herein suggest; rather, it held that section 1114 of the
Bankruptcy Code does not carry with it a preemptive force so
powerful that it completely preempts the area.  See id.  This
holding provides little support for the claims of the plaintiffs
here inasmuch as the holding was based on the court's
interpretation of section 1114 of the Bankruptcy Code, which is
not in play here.

        The defendant Union contends that the plaintiffs'
claims are entirely dependent on the existence, interpretation,

17

and application of rights arising, if at all, under the CBA.
According to the Union, the retirees' right to lifetime health
benefits "must necessarily find its genesis in the collective
bargaining agreement."  (Def.'s Response to Mot. to Remand 6).
With regard to the plaintiffs' negligence claim, the Union
observes that it will be necessary for the court to interpret the
CBA in order to determine whether it had a duty to "protect" the
retirees' benefits.[3]  "If the CBAs do not promise 'no cost'
health benefits, there is no claim because defendants can have no
'duty' to 'protect' non-existent CBA 'rights.'"  (Id. at 7
(emphasis in original)).  Moreover, interpretation of the CBA may
be relevant to the calculation of damages, if any.  (Id.).

_____

[3] The plaintiffs contend that it will not be necessary for
the court to interpret the CBA.  They assert that inasmuch as the
district court has already interpreted the CBA in Tackett no
further interpretation is warranted and Count I is not completely
preempted.  As noted, the United States Court of Appeals for the
Sixth Circuit has concluded that the district court read the CBA
too narrowly.  Relying heavily upon the vesting inference created
by UAW v. Yard-Man, 716 F.2d 1476, 1479 (6th Cir. 1983), the
panel further indicated that vesting had in fact occurred.
Tackett, 561 F.3d at 491 ("The [section 301] determination above
that the parties intended health-care benefits to vest carries
over to the ERISA  § 502(a)(1)(B) claim.").  Additionally, the
case awaits final judgment in the district court.
    Nevertheless, this action involves different parties and
claims than are at issue in Tackett.  This case also arises in a
circuit where the Yard Man inference has not been held to apply.
See Dewhurst v. Century Aluminum Co., --- F. Supp.2d ----, ---,
2010 WL 2598652, at *9-10 (S.D. W. Va. Jun. 24, 2010).

The Union's analysis of the plaintiffs' negligence claim is well taken and is further supported by the Fourth Circuit's decision in <u>Keffer v. H.K. Porter Company, Inc.</u>, 872 F.2d 60 (4th Cir. 1989).  In <u>Keffer</u>, retirees asserted section 301 claims against their former employer for breach of the CBA after the employer announced that it would be closing the plant and terminating the retirees' benefits on the day that the last CBA expired.  <u>Keffer</u>, 972 F.2d at 61.  The question before the court was whether the employer's obligation to provide benefits to its retirees continued beyond the expiration of the CBA.  <u>Id.</u> at 62.  In holding that the duty to provide benefits survived the expiration of the CBA, the court noted that the question before it was primarily one of contract interpretation in order to determine the intent of the bargaining parties.  <u>Id.</u>  The preamble to the retirees' benefits booklet stated that the benefits program would continue "subject to negotiations between the Company and the Union."  <u>Id.</u> at 63.  The court rejected the employer's suggestion that this language meant that the benefits would lapse if parties failed to reach a new agreement, and interpreted this language to mean that benefits would continue without lapse but could be renegotiated or even eliminated upon the agreement of the employer and the union.  <u>Id.</u>  Similarly, in order to determine whether the Union and M&G had the consent of

19

the retirees to modify the benefits the court may need to interpret the CBA to discern whether the bargaining parties had accounted for a situation such as this.

As to the plaintiffs' negligent misrepresentation claim, the Union asserts that the court will have to interpret the CBA in order to determine whether the alleged misrepresentations were true or false and whether reliance thereon was reasonable in light of the terms of the CBA. (<u>Id.</u>). The court finds the Union's arguments with respect to the plaintiffs' negligent misrepresentation claim somewhat less persuasive.

To assert a claim of misrepresentation under West Virginia law, a plaintiff must allege the essential elements of fraud as follows:

> "'(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.'"

<u>Folio v. City of Clarksburg</u>, 221 W. Va. 397, 404, 655 S.E.2d 143, 150 (2007) (quoting <u>Horton v. Tyree</u>, 104 W. Va. 238, 242, 139 S.E. 737 (1927) (quoting syl. pt. 1, <u>Lengyel v. Lint</u>, 167 W. Va. 272, 280 S.E.2d 66 (1981))).

20

"Where one person induces another to enter into a contract by false representations which he is in a situation to know, and which it is his duty to know, are untrue, he, in contemplation of law, does know the statements to be untrue, and consequently they are held to be fraudulent, and the person injured has a remedy for the loss sustained by an action for damages.  It is not indispensable to a recovery that the defendant actually knew them to be false."  Id.  In other words, "one under a duty to give information to another, who makes an erroneous statement when he has no knowledge on the subject, and thereby misleads the other to his injury, is as much liable in law as if he had intentionally stated a falsehood."  Id. at 405, 655 S.E.2d at 151 (internal quotation marks and citation omitted).

The plaintiffs, as retirees, were not members of the bargaining unit.  Under Pittsburgh Plate Glass, the Union was clearly under no duty to represent the plaintiffs in negotiations with M&G.  It is not clear, however, whether the Union owed the plaintiffs any other duty under federal law, such as a duty to accurately inform the plaintiffs of the nature of their retirement benefits.  On the one hand, such a duty may arise under federal law as part of the duty of fair representation.  If

21

this were the case, then Count II would be completely preempted. On the other hand, such a duty could also arise under state common law, and would not be completely preempted.

The court need not decide this question of federal policy -- that is whether federal law imposes upon unions any type of duty respecting representations made to non-bargaining unit members -- to find that the court has jurisdiction to hear Count II. Suffice it to say that the court may exercise supplemental jurisdiction over Count II of the complaint under 28 U.S.C. § 1367(a) inasmuch as it is so related to Count I that "they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Based upon the foregoing, the court concludes that the plaintiffs' negligence claim is "inextricably intertwined" with consideration of the terms of the CBA and resolution thereof will require the interpretation of the CBA. Count I is, accordingly, completely preempted. Having original jurisdiction over Count I, the court may exercise supplemental jurisdiction over Count II. The plaintiffs' motion to remand is denied.

### III. Failure to State a Claim

**A. The Negligence Claim**

As earlier noted, the plaintiffs' negligence claim alleges that the defendants had a duty or voluntarily assumed a duty to protect the retirees' interests, to continue the status quo with respect to the provision of health care benefits, and to refrain from taking actions that might impair the rights of the retirees with respect to those benefits. (Compl. at ¶ 29). According to the plaintiffs, the defendants breached these duties by failing to exercise reasonable care, directly and proximately causing the elimination of no cost health care benefits effective January 1, 2007. (Id. at ¶¶ 30-31). It is not clear from the complaint whether the alleged breach occurred while the plaintiffs were still employed by M&G or one of its predecessors, or whether the alleged breach occurred after the plaintiffs retired. The court will consider whether Count I states a claim under either construction.[4]

---

[4] The court also notes that the plaintiffs have responded to the defendant Union's motion to dismiss for failure to state a claim under section 301 of the LMRA by reiterating their argument that the claims arise under state law and not the LMRA.

23

The defendant Union aptly notes that if the plaintiffs are alleging a breach that occurred before the plaintiffs retired, and hence while they were employees and members of the bargaining unit, then the plaintiffs claims against the union are for breach of the duty of fair representation.  A union breaches its duty of fair representation when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."  Vaca v. Sipes, 386 U.S. 171, 190 (1967).  "Whether a union acted arbitrarily, discriminatorily or in bad faith requires a separate analysis, because each of these . . . [prongs] represents a distinct and separate obligation."  Thompson v. Aluminum Co. of Am., 276 F.3d 651, 657 (4th Cir. 2002) (citing Griffin v. Int'l Union, 469 F.2d 181, 183 (4th Cir. 1972)).  In fact, "[w]hile the analysis of whether a union's actions were arbitrary looks to the objective adequacy of that union's conduct, the analysis of [the] discrimination and bad faith [prongs] must focus on the subjective motivation of the union officials."  Thompson, 276 F.3d at 658 (citing Crider, 130 F.3d at 1243).  Inasmuch as the plaintiffs make no allegations that the defendant Union acted discriminatorily or in bad faith, the court focuses on the first of the three prongs.

---

Plaintiffs have more or less conceded that they cannot state a claim under the LMRA.

"To be 'arbitrary,' a union's conduct towards its member must be so far outside a wide range of reasonableness that it is wholly irrational." Thompson, 276 F.3d at 657 (citing O'Neill, 499 U.S. 65, 78 (1991)).  Generally, inept or negligent conduct by the union is not enough, in and of itself, to constitute a breach of the duty of fair representation. Carpenter v. W. Va. Flat Glass, Inc., 763 F.2d 622, 624 (4th Cir. 1985); Garrison v. Cassens Transport Co., 334 F.3d 528 (6th Cir. 2003).  Here, the plaintiffs fail to state a claim for breach of the duty of fair representation inasmuch as they allege nothing more than that the Union acted negligently.[5]

If the alleged breach occurred after the plaintiffs retired, then any purported renegotiation of their health benefits by the Union that would constitute such a breach would be legally ineffective.  As a matter of law, a union has no authority to bargain on behalf of retirees and cannot change retirees' vested benefits without the consent of the retirees and their former employer.  Pittsburgh Plate Glass, 404 U.S. at 182 n.20 ("Under established contract principles, vested retirement benefits may not be altered without the pensioner's consent. . .

---

[5] Additionally, claims for breach of the duty of fair representation are subject to a six month statute of limitations, and so the plaintiffs' claims are also time barred.  DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983).

.  The retiree, moreover, would have a federal remedy under § 301 of the Labor Management Relations Act for breach of contract if his benefits were unilaterally changed."); Int'l Union, United Auto., Aerospace, & Agricultural Implement Workers of Am. v. Yard-Man, Inc., 716 F.2d 1476, 1482 (6th Cir. 1983) ("Clearly, the union may choose to forego [bargaining for retirement] benefits in future negotiations in favor of more immediate compensation.  It may not, however, bargain away retiree benefits which have already vested in particular individuals.  Such rights, once vested upon the employee's retirement, are interminable and the employer's failure to provide them actionable under § 301 by the retiree.").  And so if the plaintiffs were not provided retirement benefits on the terms to which they believe they were entitled to such benefits, then their recourse is with their former employer under section 301 of the LMRA for breach of the CBA, not against their former Union.

Accordingly, Count I of the complaint is dismissed for failure to state a claim under section 301 of the LMRA.


B. The Negligent Misrepresentation Claim


In Count II the plaintiffs allege that the defendants negligently represented to the plaintiffs that they would be

entitled to no-cost health care benefits for life, and that they relied thereon.  (Compl. ¶ 35-36).  They claim that as a result of the defendants' negligence, they suffered economic loss, severe and pervasive emotional distress, and physical injury to their health and persons.  (Id. at ¶ 40).

If the claim arises under federal law, it is likely a claim for breach of the duty of fair representation.  For the same reasons that the court has found that the plaintiffs cannot state a claim for breach of the duty of fair representation in Count I, so too the court finds that the plaintiffs have failed to state such a claim in Count II.

Even if the claim arises under state law, the plaintiffs have failed to state a claim for negligent misrepresentation.  As earlier noted, detrimental reliance is an essential element of a negligent misrepresentation claim under West Virginia law.  Folio, 655 S.E.2d at 150.  The plaintiffs have not made sufficient factual allegations to suggest how they detrimentally relied on the representations allegedly made by the Union.  They merely assert the conclusion that they relied.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing

27

. . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2);

Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  The required

"short and plain statement" must provide "'fair notice of what

the . . . claim is and the grounds upon which it rests.'"  Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting

Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other

grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee

Corp., 508 F.3d 181, 188 (4th Cir. 2007).  In order to survive a

motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937,

1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe

v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

        In Count II, the plaintiffs do nothing more than recite

the elements of a claim of negligent misrepresentation.  They

assert reliance, but they do not make factual allegations

demonstrating how they relied to their detriment.  Accordingly,

Count II should be dismissed for failure to state a claim under

either federal or state law.

## IV. Conclusion

Based upon the foregoing, the court concludes that it is vested with jurisdiction to hear both Counts I and II of the plaintiffs' complaint.  Accordingly, it is ORDERED that the plaintiffs' motion to remand be, and it hereby is, denied.

The court further concludes that the plaintiffs have failed to state a claim upon which relief may be granted in either Count I or Count II.  It is, accordingly, ORDERED that the defendants' motion to dismiss be, and it hereby is, granted.  It is further ORDERED that all claims against the defendants be dismissed and that this action be dismissed and stricken from the court's docket.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED:  September 23, 2010

John T. Copenhaver, Jr.
United States District Judge

29